IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DOLORES R.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** <br> **Commissioner of Social Security,** <br><br> Defendant. | Case No. 1:18-cv-00627-IM <br><br> **OPINION AND ORDER** |

John E. Haapala, Jr., 401 E. 10th Ave., Ste. 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, OR 97204; Heather L. Griffith, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Ave., Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**IMMERGUT, District Judge.**

Dolores R. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Social Security

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It has also been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Differing interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). The "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225–26.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB and SSI on September 13, 2013, alleging disability beginning on September 1, 2010. AR 15. Plaintiff was born on August 6, 1963, was 47 years old at the alleged disability onset date, and is now 56 years old. AR 29. Her applications were denied initially and upon reconsideration. AR 101–02, 145–46. She timely requested a hearing before an administrative law judge ("ALJ"), and the administrative hearing was held on January 30, 2017. AR 54; *see* AR 43–48. On February 28, 2017, the ALJ determined Plaintiff to be not disabled. AR 30–31. After this decision, Plaintiff requested a review of the decision by the Appeals Council. AR 228. The Appeals Council denied Plaintiff's request for review on February 14, 2018. AR 1. The ALJ's decision thus became the final decision of the Commissioner. *Id.* Plaintiff now seeks judicial review of this decision. ECF 1.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *See Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ first noted that Plaintiff met the insured requirements of the Social Security Act through June 30, 2012. AR 17. The ALJ then engaged in the sequential analysis required by regulation. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date, September 1, 2010. AR 17–18. At step two, the ALJ concluded that Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees status post left knee replacement in April 2014; osteoarthritis of the bilateral shoulders and elbows; osteoarthritis of the left ankle; residual effects of a right ankle fracture from July 2015; and obesity. AR 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21. The ALJ then determined that Plaintiff had a RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except the climbing of ramps and stairs must be limited to occasionally and the climbing of ladders, ropes, or scaffolds

must be entirely precluded from assigned work duties. AR 22. The ALJ also found that kneeling, crouching, bending at the knees, or crawling must be precluded from assigned work duties. *Id.* Pushing, pulling, and overhead reaching with the bilateral upper and lower extremities must be limited to occasionally. *Id.* Finally, the ALJ precluded concentrated exposure to vibrations or hazards, such as machinery or heights. *Id.*

Relying on testimony from the vocational expert, the ALJ found at step four that Plaintiff was unable to perform her past relevant work. AR 29. The ALJ then found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including bill sorter (DOT 209.687-022). AR 29–30. Accordingly, the ALJ concluded that Plaintiff was not disabled from her alleged onset date, September 1, 2010, through the date of the decision, February 28, 2017. AR 30–31.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly rejecting the opinions of Marcelin Charles, M.D., a treating physician,[2] and (B) improperly rejecting Plaintiff's subjective symptom testimony. ECF 15 at 8.

**A. Medical Opinion of Marcelin Charles, M.D.**

Plaintiff asserts that the ALJ erred in according Dr. Charles's opinion little weight because the ALJ failed to: (1) provide specific and legitimate reasons for rejecting the opinion; and (2) properly consider the factors in 20 C.F.R. § 404.1527(c)(2)–(6) when weighing the opinion.

---

[2] The record and transcript show that Plaintiff's primary care physician is named Dr. Marcelin Charles, *see, e.g.*, AR 62, 700, but the ALJ's decision and Plaintiff's brief refer to this physician as Dr. Charles Marcelin.

### 1. Specific and Legitimate Reasons

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes among the opinions of three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, then the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating physician's opinion. *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Andrews*, 53 F.3d at 1042–43.

Dr. Charles treated Plaintiff as her primary care physician from June 2013 through the January 2017 hearing. *See* AR 62, 329–39, 354–93, 631–45, 700–04. The parties do not dispute that Dr. Charles qualifies as a treating physician, nor do the parties dispute that the ALJ needed

PAGE 7 – OPINION AND ORDER

to provide specific, legitimate reasons for discounting Dr. Charles's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (holding that a treating physician's opinion may be rejected for specific and legitimate reasons if contradicted by another physician). This Court analyzes the opinion of Dr. Charles as the controverted opinion of a treating physician, which may be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record.

Dr. Charles prepared two medical source statements for this case. AR 390–93, 700–04. Dr. Charles completed the first statement on March 11, 2014. AR 390–93. In that statement, Dr. Charles opined that Plaintiff was limited to sitting for one hour and fifteen minutes at one time, standing ten minutes at one time, and could sit, stand, or walk for less than two hours in an eight-hour workday. AR 391. He stated Plaintiff would require elevating her legs for 70% of an eight-hour workday. AR 392. Dr. Charles further stated that Plaintiff required a cane or other assistive handheld device when walking. *Id.* Dr. Charles also noted that Plaintiff was limited to carrying up to ten pounds on a rare basis, but he included no limitations related to reaching, handling, or fingering. AR 392.

Dr. Charles provided a second medical source statement opinion on October 6, 2016. AR 700–04. In that opinion, Dr. Charles opined that Plaintiff was limited to sitting or standing less than two hours in an eight-hour workday. AR 701. Dr. Charles again stated that Plaintiff was limited to sitting for one hour and fifteen minutes at one time, standing for ten minutes at one time, and could sit, stand, or walk for less than two hours in an eight-hour workday. *Id.* He also listed that Plaintiff had an abnormal gait. AR 700. Dr. Charles reduced the time he predicted Plaintiff would need to elevate her legs to 50% of the workday. AR 702. He limited Plaintiff to grasping, turning, or twisting objects for 20% of an eight-hour workday with her right hand and

PAGE 8 – OPINION AND ORDER

40% of an eight-hour workday with her left hand. AR 703. He also concluded that Plaintiff would be off task 25% or more of an eight-hour workday. *Id.*

The ALJ properly gave little weight to the opinion of Dr. Charles. The ALJ found the opined limitations were inconsistent with Dr. Charles's objective observations and the evidence in the record. AR 28. Inconsistency between a physician's opinion and the physician's medical observations is a specific, legitimate reason to discredit the opinion. *Tommasetti,* 533 F.3d at 1041. An ALJ may discredit medical opinions that are not supported by the record as a whole or by objective medical findings. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). The ALJ listed several specific inconsistencies. *See* AR 28. Plaintiff argues that each falls short of providing a specific, legitimate reason to discount the opinion. The Court will address them in turn.

First, the ALJ noted that Dr. Charles's 2014 statement was created shortly before Plaintiff's knee replacement surgery in April of the same year. *Id.* For that reason, the ALJ found that the opined limitations failed to account for her significant improvement after the surgery and throughout the period of disability. *Id.* Plaintiff argues that this reason is not a specific, legitimate reason to discount the opinion because the ALJ attributes all of Plaintiff's limitations to her knee. ECF 15 at 10. This Court disagrees. The ALJ properly determined that some of the conclusions in Dr. Charles's statement, such as the limitation that Plaintiff required a handheld device to assist with walking, were inconsistent with Plaintiff's functionality after the operation. Records after the knee replacement report that Plaintiff walked with normal ambulation and without an assistive device. *See, e.g.*, AR 504; *see also Tommasetti,* 533 F.3d at 1041.

PAGE 9 – OPINION AND ORDER

Second, the ALJ found that, although Dr. Charles asserted that Plaintiff required elevating her legs for at least half of the workday, his treatment notes state that Plaintiff exhibited normal muscle tone, normal coordination, no edema, and intact distal pulses. AR 357; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that an ALJ may properly reject a physician's opinion because of its internal inconsistencies). Plaintiff contends that the ALJ erred by suggesting that edema and vascular issues would be the only reasons Plaintiff would require elevating her legs. ECF 15 at 11. However, Plaintiff ignores the ALJ's reference to Plaintiff's normal muscle tone and coordination. *See id.* Furthermore, the ALJ incorporated the reasons listed for discounting the opinion of another physician, Yaser Metwally, M.D., into the explanation for the weight she accorded Dr. Charles's opinion. *See* AR 28. In that analysis, the ALJ stated that extreme leg elevation limitations were inconsistent with the results of Plaintiff's physical examinations that showed her knees were stable and her vascular and neurological examinations were intact. *Id.* The ALJ did not limit the reasons for elevation limitations to edema or vascular issues, nor did she err in discounting Dr. Charles's opinion on this basis.

Third, the ALJ found insufficient evidence to support Dr. Charles's conclusions regarding Plaintiff's standing and walking limitations. The ALJ cited numerous treatment records that describe Plaintiff as ambulating normally, with a normal gait, and without an assistive device. *See* AR 28, 342, 397, 504, 572, 677. Plaintiff argues that Plaintiff's normal gait and stance were not a specific and legitimate reason to discount Dr. Charles's opinion. ECF 15 at 12. Plaintiff appears to contend that a "normal gait" is not indicative of standing or walking limitations because Plaintiff reportedly had a normal gait when she required an assistive device to walk. *Id.* In addition, Plaintiff cites to instances in the treatment record where Plaintiff's gait

was not in fact normal but antalgic. *Id.* (citing AR 400, 586, 771). Plaintiff mischaracterizes the ALJ's basis for discounting the opinion. The ALJ did not base her analysis on Plaintiff's gait alone. Rather, the ALJ found that the record did not support the restrictions in Dr. Charles's opinion based on the numerous records of Plaintiff ambulating normally, with a normal gait, and without the use of a device. AR 28. This reason is a specific, legitimate reason for discounting Dr. Charles's opinion.

Fourth, the ALJ noted that Dr. Charles opined that Plaintiff was "essentially disabled" and that he did not believe that she would "ever be able to return to any kind of work." AR 719. The ALJ found these opinions inconsistent with Plaintiff's reports that she worked for her husband's business as a bookkeeper, worked as a homemaker, and was staying "very busy." AR 531, 589, 678. Plaintiff argues that these activities were not a sufficient basis for rejecting the opinion because the activities required little effort. Plaintiff testified that she only works part time as a bookkeeper and completes "small things" around the house. AR 61. This Court does not decide whether these activities conflict with the restrictions in Dr. Charles's medical source statement, but agrees with the ALJ that Plaintiff's self-reported activities contradict Dr. Charles's opinion that Plaintiff is unable to do "any kind of work." AR 719. Accordingly, the inconsistency between Dr. Charles's conclusions and evidence in the record is a specific, legitimate reason to discount his opinion. The ALJ properly accorded the opinion of Dr. Charles limited weight.

While making these arguments, Plaintiff also contends that the ALJ erred by stepping into the role of physician. The Court rejects the assertion that the ALJ substituted her judgment for that of the physician. ECF 15 at 12. The ALJ is charged with resolving conflicts in the record. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ was within her authority as a factfinder to compare Dr. Charles's medical opinions to the objective findings in the record

and to resolve any conflicts. The ALJ found that Dr. Charles's opinion did not match the objective observations in the treatment notes. These inconsistencies are a specific, legitimate reason to reject Dr. Charles's medical opinion.

### 2. 20 C.F.R. § 404.1527(c)(2)–(6) Factors

Plaintiff also argues that the ALJ erred by failing to consider the factors from 20 C.F.R. § 404.1527(c)(2)–(6) when determining how much weight to accord the opinion of Dr. Charles.[3] If a treating physician's opinion is not given controlling weight because it is inconsistent with other substantial evidence in the record, the ALJ must consider the relevant weight to be given to the opinion under the factors provided in 20 C.F.R. § 404.1527(c)(2). *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). These factors include the length and nature of the treatment relationship, supportability of the opinion, consistency with the record, and specialization of the physician. *See* 20 C.F.R. § 404.1527(c)(2)–(6).

The ALJ properly considered the relevant factors when weighing Dr. Charles's opinion. First, the ALJ acknowledged Dr. Charles's treating relationship with Plaintiff as her primary care physician. AR 28. Then, as discussed in the previous section, the ALJ compared Dr. Charles's opinion to the doctor's own objective findings and the record as a whole, thereby applying the supportability and consistency factors. *See* 20 C.F.R. § 404.1527(c)(3)–(4). After weighing the factors, the ALJ reasonably decided to accord the opinion little weight. The ALJ did not err.

---

[3] Plaintiff consistently cites to 20 C.F.R. § 404.1527(d) in her briefing, which concerns issued reserved for the Commissioner, rather than subsection 20 C.F.R. § 404.1527(c), which provides factors for weighing medical opinions. The Court analyzes the factors under 20 C.F.R. § 404.1527(c)(2)–(6).

## B. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ improperly evaluated Plaintiff's subjective symptom testimony. A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez*, 572 F.3d at 591. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). In this analysis, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates

PAGE 13 – OPINION AND ORDER

the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6–7.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the framework. AR 26. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in record. *Id.*

At the hearing, Plaintiff testified that she is in constant pain from osteoarthritis and her medications limit her ability to focus. AR 60–61. She stated that she can sit for only thirty

PAGE 14 – OPINION AND ORDER

minutes and stand for only five. AR 62. She reported that she can walk for approximately one block. *Id*. She also stated in her function report that she can perform housework for fifteen minutes before needing to rest. *See* AR 275.

The ALJ reasonably discounted Plaintiff's subjective symptom testimony. As an initial matter, the Court agrees that the ALJ erred by discrediting Plaintiff's testimony based on her alleged use of a walker in September 2013. The ALJ found the testimony that Plaintiff used a walker in September 2013 was inconsistent with contemporaneous medical records reporting she did not use such a device, citing a treatment note from September 6, 2013. *See* AR 25, 342. However, that treatment record states both that Plaintiff "uses [a] walker" and that she walks "with no assistive device." AR 342. It is unclear from this document whether the error may be attributed to the author of the treatment notes or whether Plaintiff, in fact, used a walker at the time. Accordingly, this reason is not clear and convincing, and this Court rejects this reason for discrediting Plaintiff's testimony. Nevertheless, the ALJ's error was harmless because the ALJ provided alternative clear and convincing reasons for discounting Plaintiff's testimony. *See Batson*, 359 F.3d at 1197 (stating that an ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld).

The ALJ provided alternative clear and convincing reasons for discounting Plaintiff's symptom testimony. For example, although Plaintiff testified that pain symptoms precluded her ability to work, she reported throughout the record that her proper treatment, exercise, and weight loss alleviate her pain. *See, e.g.*, AR 504, 586, 588, 676, 677, 771. This Court finds that this was a valid reason to discount Plaintiff's subjective testimony regarding the severity of her symptoms. *See Orteza*, 50 F.3d at 750 (holding that effectiveness of medication may be

considered when making credibility determinations); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (finding that evidence that medical treatment relieves symptoms may undermine a claim of disability).

Additionally, the ALJ found that Plaintiff's reported work and daily activities do not support her testimony that she is unable to sustain work. Plaintiff argues that her activities are not clear and convincing reasons to discredit her testimony because she merely performed small tasks around the house and worked part-time. ECF 15 at 18. Plaintiff also notes that when she stated that she was "taking on a new job," she was reportedly limited to walking less than 300 feet. *Id.*; *see also* AR 677. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Plaintiff successfully manages household chores, her hygiene regimen, prepares meals, shops, attends church and social functions, reads, and watches television. AR 275–76, 571. Furthermore, as previously noted, Plaintiff reported in 2016 that she was "currently taking on a new job and is very busy throughout the day." AR 678. Although Plaintiff's movement is limited, this Court finds that her RFC properly accords for that limitation. AR 22. The ALJ properly determined that Plaintiff's work and daily activities are inconsistent with her alleged limitations.

The ALJ provided clear and convincing reasons for finding that the intensity, persistence, and limiting effects of the alleged symptoms were not consistent with Plaintiff's testimony based

on an examination of the record. Accordingly, the ALJ's finding is supported by substantial evidence.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 30th day of September, 2019.

/s/ Karin J. Immergut<br>
Karin J. Immergut<br>
United States District Judge